In his appeal, the sentencing court erred in implying the recklessness enhancement to Mr. Rogers' sentence by concluding that, quote, Mr. Rogers showed that he was aware of the reckless endangerment that his actions caused by shining laser at the aircraft. Because this conclusion was inerrant, a sentencing remand is required to re-sentence Mr. Rogers without the enhancement. Now under the guidelines, the awareness of the risk has to be proven by the government to be something specific about the helicopter here. And we know that because the government concedes that the definition of reckless can be found at 2A1.4 comment note 1 as, quote, and this is part of the definition, a situation in which the defendant was aware of the risk created by his conduct. Below, the government maintained that Mr. Rogers' awareness of the risk could be just generally to using a laser beam. But I think that's insufficient as a matter of law because I could understand that it's reckless to shine a laser beam at someone right in front of me, at their eye. But I think it's a different thing altogether when you have a helicopter that's flying thousands of feet in the air. And the problem here is that's what, that's the type of leap I think the district court made here. There was an incident here where Mr. Rogers shined his laser beam at a passing car nearby his house or his apartment. And during that incident, the evidence proved that, and this is a separate incident, of course, that Mr. Rogers could see the inside of the car and could see that it was distracting the driver. But it's a much different thing to shine a laser beam in a helicopter, isn't it? When that helicopter's up in the air and the government didn't show any evidence that when you shine a laser beam at a helicopter that you can see the interior of the helicopter. You can see it light up or that you can see it distract the pilot. And I think kind of logic cuts to the contrary. What about, what do you mean logic cuts to the contrary? Well, every time I've ever seen a helicopter, it's way up there. And I can't see what's going on inside the helicopter. It's too far up. But if you're aiming the laser at the helicopter, why doesn't it follow it? If you hit it at the right angle, you could interfere with the vision of the pilot. Well, no, I think absolutely it's a great point, Your Honor. You can absolutely do that. What I'm saying is something distinct that you can't see that it's occurring in there. Why do you have to see it in order to apply the adjustment? In order to have knowledge, why do you have to be able to see that it happens? Fair enough, Your Honor. I mean, I don't think you have to. That's one way you could bear it out. And here, the district court, I think one of the conclusions, you could see in the airplane and therefore you can impute, or in the car, so you can impute that to a helicopter. I think the other findings made by the district court all pertain to Mr. Rogers' guilty plea to the underlying offense, aiming a laser point at an aircraft in 18 U.S.C. Section 39A. And he's guilty of that crime, of course. We're not disputing that. But when you look at the court's findings, they don't help the recklessness. For example, the district court found that he knew it was illegal. He did it on purpose. He followed the aircraft with his laser beam. He conceived of himself after doing it. That's all true. But that's just evidence that he pled guilty to the crime. And I think to conclude otherwise is that it becomes an automatic enhancement, right? The base level offense is nine. And when you apply the enhancement, it becomes an 18. And we have urged the government to appoint us to a circumstance, and when you plead guilty to one of these crimes, that the recklessness enhancement is not going to apply. What and which crimes? Well, aiming a laser point at an aircraft, right? This crime? This exact crime, yes, Your Honor. What about other crimes? Yes, sorry if I was unclear. Exactly, exactly. Because I don't think that enhancement should be applied to guard a variety of offenses. You need to make more of a showing because the base level offense, at least intended by the guidelines, is a nine. Right? And so to get that recklessness enhancement, you have to show that conduct. And here, I don't think we're asking too much of the government for a couple of reasons. One, I think that's Congress's intent. We cite to the House report, it's called Securing Aircrafts Against Lasers, that demonstrates that many people point lasers at planes without knowing the dangers. That report states, quote, while the burden may be easily established when a person attempts to detonate a bomb or attempts to overtake a member of the flight crew, it is difficult to establish the same type of intent for a laser incident, even if the effect is actually to endanger the pilots. So I think we need to read the guidelines in harmony with the statute, because Congress did its homework here. What were you reading from it? I'm sorry, it's called the House report. It's a House report, and it's called Securing Aircrafts Against Lasers. It's cited in my brief. I think the other important factor here is that this very case demonstrates that the government could have made that demonstration, that proof, but it just failed to because it didn't have competent evidence. There was an allegation that Mr. Rogers, and again this wasn't proven by competent evidence, that Mr. Rogers was outside his apartment on another occasion, and he was playing with some kids, and those children asked, well, can we take your laser beam and play with it? And he said no, allegedly. This is all allegations. No, you can't do it because if you shine it up in the air, you can hit an airplane, and the airplane will think that they're being attacked by terrorists. I think the important thing by that, and the district court properly excluded that evidence, I think the important thing about that is that it shows that the government can make this showing, and because it failed to do so, it shouldn't be entitled to the enhancement as a matter of law. I think the other big factor here is the relevant case law, circuit court case law, is in our favor, and it's on all fours. There's the Garden Hire case and the Rodriguez case. I think both those cases are very well-reasoned cases. I don't think they're distinguishable in this circumstance. I think what the government is relying on to reach a contrary position is really distinguishable case law. You have the Ginnie case that they cite too, and that's a totally different circumstance. We have someone that's in an airplane who is hitting on a stewardess, being abusive to the pilot. So you're aware of that conduct because you're inside the plane and you're doing all that conduct. Here it's just not so intuitive when you're in your apartment and you have technology that's beaming something up from your apartment thousands of feet in the air. And so I think it's not an apples-to-apples scenario. The final issue I want to touch on is prejudice, and I think this is important here. The government disputes prejudice here, but if this court were to conclude that the enhancement was improper, I really don't think that prejudice can be disputed, and that's for a couple of reasons. The district court concluded that his guidelines range was 41 to 51 months, and ultimately downward varied to sentence him to 36 months. Without the enhancement, his guidelines range goes down to 15 to 21 months, so that's a significant drop, and brings him down below his sentence. And I think that we have a credible basis to argue that the court would only sentence him within 15 to 21 months, but maybe even lower since it originally downward varied. Well, why did the court vary downward? Maybe the court thought the nine levels was a little too tough. That might be true. Maybe if they couldn't give the nine levels, you'd think that the base offense is too weak, but you're saying you don't know that the judge would have to explain on remand. That's what I think, Your Honor, and I think those are all good points, but I think that a guidelines sentence would be, instead of, they would have to upward vary. Right. Exactly, Your Honor. If it's okay with the court, I'm going to reserve the remainder of my time for rebuttal. All right. Very well. Thank you, Mr. Casey. May it please the court, Brian Casey appearing on behalf of the United States in this matter. The issue to be cited by the district court was whether the enhanced base offense level of 18 applied because the defendant acted with recklessly endangered the safety of an aircraft when they pointed a laser at it. The district court viewed it through the issue of whether the defendant was aware, knew the risk of the harm that their conduct would cause. I think there was some suggestion in the briefs that that wasn't the legal standard that was being applied, but I think the record below shows that, I mean, that's what the parties were discussing was what level of harm did the government need to say, need to prove that the defendant was aware of in order for this enhancement to apply? We do, Your Honor. Yes. Oh, absolutely, Your Honor. So Brian, looking at what the district court said, it seemed to me that it was reflecting the knowledge on the defendant's part of the guilt that he had for the crime. What is the pattern there? He knew it was illegal. He did it on purpose. He filed the aircraft. Exhibited a knowledge of dangerousness. The car earlier had been interrupted with this activity when his presence was discovered. I was trying to avoid it. I was trying to conceal myself. To me, that's all guilt and knowledge. Well, I think it is, but I think it's additionally evidence that shows that he knew what he was doing was dangerous. Why? Well, I think you go to saying that just prior to making that finding, the district court had also pointed out, don't we generally know that pointing a laser at someone's eye is dangerous? That's a different argument. That's true in every single case. No, I don't think so, Your Honor, because what we're looking at is what I was going to next was what the fact of this case is. The fact of this case is that he pointed it at the cockpit of a police helicopter. And now that's a different, that's different than every single laser pointing case. The laser pointing statute allows to, you know, pointing a laser within the flight path of an aircraft. So if you were to, you know, say point it in the flight path, you might have a different fact pattern. In addition, if your facts were something like the person intentionally was hitting the tail of an aircraft such that they were avoiding the cockpit, that could be a different fact pattern. Well, I think that, I think that's where you go to the general evidence that you know pointing at, at, at someone can distract them. And I think that that's the court's first point. Well, I think the court's first point is, yeah, I think the first point is, you know, just, just using common knowledge. But I think you take from the perspective of the common knowledge that pointing a laser at someone can distract them. And I think you go from there, you have the explicit instance where this defendant was, was pointed at, in this case, an automobile, but a motor vehicle. He was pointed at the side of a car when the car turns, he turns it away. So it's clear that he wasn't going to point it into the windshield, into that guy's eyes. He knew that that would be something distracting. I mean, I think, I think it shows, I think there is direct evidence there that the person is aware that pointing it into, you know, a windshield to someone operating a motor vehicle is something that you can't do is something that would cause some harm. I mean, I think just knowing that it's going to be distracting to someone does create a risk. Someone operating a motor vehicle that's distracted creates a risky situation. I think, I think the, the fact he pointed it away, excuse me, Your Honor, I didn't mean to interrupt. Well, I think here, you know, the standard of review is, is a clear error. And I think point, pointing it away because it'd be distracting to the driver is a very reasonable inference. And it is an inference that is, you know, you can conclude more likely than not. I mean, the district court had to find by preponderance that the base, this enhanced base level applied. And I think you can infer. Well, the ultimate, the ultimate finding, I'm saying, is that he's aware of the risk. And I'm saying that pointing it at the car, pulling it away because it would be dangerous is something that, that, that the district court can. There's no, I mean, I, I mean, I think besides the conduct itself, Your Honor, that's what we have. We have the description of the conduct. We don't have, we don't have him making any further statement that he knew it was dangerous. What we do have is him making a statement. We actually gave the court the exhibits that we relied on at the testimony. We admitted that police report into the record. So you can read the full report. So this comes from. It actually comes with an interview with a person driving the car. They found a person who lived in the apartment building and said, well, I was driving a car. I saw him pointing a laser at my car. When I turned to face him, he pulled it away. Yes, Your Honor. It's part of our appendix that was filed. We filed a five exhibit appendix. Absolutely. I do. That's exactly what he's talking about, Your Honor. Yes. That's what I, that's what I submit, Your Honor. Absolutely. I think he, I think judge Finner makes explicit finding that this defendant was aware of the risks. And because of that finding, which I think is reviewed for clear error, he implies the enhancement. And I believe that that's a proper application of the enhancement. Well, I think it was wrongly decided. But in addition, I don't think it's applicable to this case. There are certain ways that it can be pretty clearly distinguished. I think the first one is on the evidence. The evidence in Garden Hire involved evidence about a long distance between this defendant pointing a laser at a private jet. In Garden Hire, there's no evidence the defendant knew he hit the jet. In our case, there is evidence that he knew he hit the helicopter. In Garden Hire, there's no evidence about how the laser struck, where the laser struck, what the exact effect was. In our case, it's that he pointed it at the helicopter, that he struck the cockpit, and that he did so and then he followed the aircraft and was doing so intentionally. And he even admits he was doing so intentionally. In Garden Hire, the evidence was over great distances, lasers present kind of unique and maybe even unexpected dangers to aircraft. The light expands. The laser could hit cockpits and refract. In our case, we didn't have that. In our case, the evidence is the agent explicitly testified that over the distance involved, there was no risk of refraction. That that just wasn't, it was too close of a distance. In addition, while the laser hit the cockpit three times, the first time it did refract and light up the cockpit, the other two times it hit the pilot directly in his right eye. So that's pretty good evidence that this is a small laser beam that's hitting him directly in a single eye. And the pilot said, you know, in my experience, I've been struck by a laser before and the way that it followed us was intentional. And I think the district court could further say that, could further infer or make the inference that hitting the cockpit and hitting that pilot was intentional. So I think that that is what the district court could have concluded on these facts. That further distinguishes Garden Hire. In addition, Garden Hire applies a further standard of proof that the Eighth Circuit doesn't require. The Garden Hire would have required the district court to find the risk of dangerousness by clearing convincing evidence. The Eighth Circuit has rejected that rule and the district court only needed to find the awareness of risk by preponderance. I see that my time has expired. Thank you, Your Honor. I think the government presupposes that the standard of view here is for clear error. And, of course, this is an issue of first impression. We maintain that... I don't think so. And let me tell you why, Judge. I think it's instead, his conduct is not disputed here, right? So the issue is whether the conduct satisfies the guidelines as a matter of law or not. I think we're not disputing that he shined that laser beam at that helicopter. Right. I see your point. But I think in a similar, like, obstruction of justice, the Chavez case from this court, you have people doing conduct and that's reviewed de novo. I see similarities here. But even like in the case of Chavez, let's just assume that it's for... I think it shows that he knew the dangers to the car. But I don't think it's intuitive to helicopters. I don't think if you, you know, as a general matter or proposition, people understand that things beam up thousands of feet in the air. And I think the garden hire really elaborates on that, how laser beams are uniquely powerful and people don't understand it. Thank you for your time. All right. Thank you for your... case is submitted and the court will file an opinion in due course.